UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAFER HUSSAN,

Plaintiff,

CIVIL CASE NO.   04-40245

v.

CITY OF INKSTER, OFFICERS BOOKER          HONORABLE PAUL V. GADOLA
SNOW and JAMIE DEVOLL,                    U.S. DISTRICT COURT

Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

Plaintiff Jafer Hussan filed a complaint on August, 25 2004, alleging that Defendants City

of Inkster and Inkster Police Officers Booker Snow and Jamie Devoll used excessive force and

failed to provide adequate medical care in violation of  42 U.S.C. § 1983 during Plaintiff's arrest.

Plaintiff also claims that  Defendants acted in concert or in conspiracy to deprive Plaintiff of his

constitutional rights in violation of 42 U.S.C. §1985(3).  Now before the Court is Defendants'

motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56, filed on

November 1, 2005.  Plaintiff filed a response to the motion on November 21, 2005, and Defendants

filed a reply to the response on December 5, 2005.  For the reasons stated below, the Court will grant

the motion in part and deny the motion in part.

**I.  Background**

On September 7, 2002, Plaintiff was pulled over in the City of Inkster twice within several

minutes.  The first time, Plaintiff was pulled over by Officer Jamie Devoll.  Despite Plaintiff's

allegation that he failed to receive a citation as a result of this stop,  Defendants' records

1

indisputably indicate DeVoll issued Plaintiff a ticket for failing to use a turn signal and defective equipment. *See* Def. Mot., Ex 1.

After Plaintiff was issued the ticket, Officer Snow, who had arrived as back-up to Officer DeVoll, allegedly observed Plaintiff cross the centerline of the road as he pulled away. As a result, Officer Snow effected a second traffic stop. Pl. Resp., Ex. 1, Dep. of Hussan, pp. 34, 48. Officer Snow then informed Plaintiff that he was being pulled over for crossing the center line. *Id.* at 34-35. Officer Snow alleges that he next asked Plaintiff why he had driven erratically, to which Plaintiff responded, in a confrontational manner, that it was none of the officer's business. Defendant Snow alleges that Plaintiff's behavior was very odd, and that Plaintiff repeatedly failed to comply with his orders, was sweating profusely, and referred to him as "sweetheart." Def. Mot., Ex 4, Dep. of Snow, pp. 11-14, 20-21. When Snow asked Plaintiff if he would read the name on Snow's police badge, Plaintiff indicated that he could not read or write. Pl. Resp., Ex. 1, Dep. of Hussan, pp. 35, 49, 56. Officer Snow then asked Plaintiff to recite his ABCs; Plaintiff, however, indicated he could not perform this test either.

Officer Snow alleges that because Plaintiff was driving after midnight in an area known for drug trafficking and prostitution, and given Plaintiff's demeanor, glassy eyes, and profuse sweating, he believed that Plaintiff was under the influence of drugs or alcohol. Consequently, Officer Snow ordered Plaintiff to get out of his car and allegedly stated, "Get out of the car, dummy." Pl. Resp., Ex. 1, Dep. of Hussan, p. 35. Snow asked Plaintiff to walk in a straight line, Def. Mot., Ex. 4, Dep. of Snow, p. 21, to which Plaintiff admittedly replied that he was "not playing your games." Pl. Resp., Ex. 1, Dep. of Hussan, p. 35. Subsequently, Officer Snow instructed Officer DeVoll to arrest Plaintiff for disorderly conduct and obstruction of justice, to handcuff Plaintiff, and to put him in

2

the patrol car.

The parties have widely divergent accounts of the events that occurred next.   Defendants allege that Plaintiff "was totally uncooperative . . . invited the officers to take him to jail, and called the officers derogatory names," Def. Br., p. 2, while Plaintiff argues that he "never resisted arrest, never made any loud noises, swore or used profanities, never screamed and never attempted to push away from the officers while he was being arrested."   Pl. Resp., Ex. 1, Dep. of Hussan, pp. 49, 52, 56-57.  Defendants further contend that Officer DeVoll simply handcuffed Plaintiff and helped him to sit in the backseat of the patrol vehicle.  Def. Mot., Ex. 4, Dep. of Snow, pp.14-15; Ex. 3, Dep. of DeVoll, p. 10.   Plaintiff, however, claims that Snow pushed him towards DeVoll, DeVoll handcuffed Plaintiff, and then Plaintiff was "thrown in the police car on the floorboard" and placed in such a position that he "couldn't get back up."  Pl. Resp., Ex. 1, Dep. of Hussan, pp. 21-22, 42.

During the arrest, Plaintiff, admittedly sweating profusely, allegedly notified the officers of his pre-existing heart condition.  He also claims he subsequently notified the officers from the floor of the backseat, "I'm having a heart attack."  Pl. Resp., Ex. 1, Dep. of Hussan, p. 23.  Plaintiff now claims that as a result of being "thrown" into the car, his heart condition considerably worsened. Defendants deny that Hussan told them about his bad heart or that he was  having a heart attack at any time before they reached the police station.

Arriving at the police station, Plaintiff failed to exit the vehicle under his own power. Plaintiff alleges this was because he was unable to do so, still lying face-down on the floor of the car with his hands behind his back,  Pl. Resp., Ex. 1, Dep. of Hussan, p. 2, while Defendant Snow asserts that Plaintiff simply refused comply with his command to exit the vehicle.  Officer Snow left Plaintiff in the vehicle while he conferred with Lieutenant Vergona about the allegedly

3

uncooperative arrestee.   Lieutenant Vergona and Officer Jamil then removed Plaintiff from the vehicle and took him into the police station.  Plaintiff was taken to the booking area of the station where he complained that he was very sick and needed help.  Pl. Resp., Ex. 1, Dep. of Hussan, p. 43.  The booking process was interrupted as soon as the Inkster fire and rescue team arrived to evaluate Plaintiff's condition.  Pl. Resp., Ex. 1, Dep. of Hussan, pp. 43-44.  Plaintiff was subsequently transported to the hospital for further medical attention.  Pl. Resp., Ex. 1, Dep. of Hussan, p. 44.  Based on these events, Defendants argue that Plaintiff was provided medical attention as soon as was practical, given the circumstances.

Once at the hospital, Plaintiff's complaints were noted and he was examined.  Although Plaintiff indicates he was told he was having a heart attack, Pl. Resp., Ex. 1, Dep. of Hussan, p. 45, cardiologist Chaman Sohal, M.D., testified that Plaintiff did not suffer a heart attack.  Def. Mot., Ex. 5, Dep. of Sohal, pp. 9-11.  Dr. Sohal further testified that, even if as Plaintiff testified, he was thrown on the floor of the officer's vehicle, Plaintiff's pre-existing congestive heart failure *condition* would not have been aggravated by the events of the evening, even if *symptoms* of his condition may have seemed aggravated.  *Id*. at 20.  Dr. Sohal agreed that while he couldn't "rule out with 100 percent certainty that [Plaintiff's] interaction with the Inkster police on the night of this incident may have had some impact upon either his . . . heart rate or his shortness of breath," it was "much more likely that the condition that he presented with to the emergency room at Annapolis Hospital, the congestive heart failure condition, was related to his previous history of congestive heart failure, rather than something that occurred on that particular night."   *Id*. at 36.

As a result of the events of August 25, 2004, Plaintiff alleges three claims: (1) Defendants used excessive force in violation of Plaintiff's constitutional rights under the Fourth Amendment

4

pursuant to 42 U.S.C. §1983, (2) Defendants failed to provide adequate medical care in violation of Plaintiff's constitutional rights under the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C. §1983, (3) Defendants acted in concert or in a conspiracy to deprive Plaintiff of the aforementioned rights in violation of 42 U.S.C. §1985(3). All Defendants now move for summary judgment.

## II.  Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material

5

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

6

## III.  Analysis

### A.  Claims Pursuant to State Law

The Court must begin by noting that Defendants' motion for summary judgment contains a total of nine issues, four of which relate to state law claims.  Although Plaintiff responded to those state issues in his brief opposing Defendants' motion for summary judgment, and Defendants replied, those issues are not properly before the Court.  This Court dismissed Plaintiff's state law claims on September 7, 2004.  Order of Partial Dismissal Without Prejudice [docket entry #2]. Consequently, the Court will not consider the merits of any arguments relating to the state law claims.

### B.  Claims Pursuant to 42 U.S.C. § 1983

#### 1.  Excessive Force Claim Against Defendant Officers Snow and Devoll

Plaintiff claims that Defendant Officers Snow and Devoll exercised excessive force in violation of §1983 when Defendants allegedly threw Plaintiff face down into the patrol car following his arrest.  Defendants deny using any unnecessary force against Plaintiff.  Instead, Defendants claim Plaintiff was never thrown down but rather that he was helped to sit in the backseat as he was placed in the patrol car.  Defendants argue that even if Plaintiff was roughly placed in the patrol car, any force used to get him into the patrol car was reasonable given Plaintiff's difficult demeanor and obstructionist actions.

A court analyzing a claim of excessive force brought pursuant to 42 U.S.C. § 1983 first recognizes that § 1983 " 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Consequently, a court's analysis

7

"begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394.  "[A]*ll* claims that involve excessive force– deadly or not– in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* (emphasis in original).  "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Id.*

The Fourth Amendment to the United States Constitution prohibits the use of excessive force when effecting an arrest.  *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005).  The United States Supreme Court recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. at 396.  However, a police officer's use of excessive force in executing an arrest may give rise to a claim by the victim under 42 U.S.C. § 1983.  *Tennessee v. Gardner*, 471 U.S. 1 (1985).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).  The test a court must apply to determine if the force used was excessive is "whether the officers' actions [were] 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *St. John*, 411 F.3d at 771 (quoting *Graham*, 490 U.S. at 397).  "This standard contains a built-in measure of deference to the officer's on-the-spot

8

judgment about the level of force necessary in light of the circumstances of the particular case."
*Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). The Sixth
Circuit considers the following non-exhaustive factors when making this determination: (1) "the
severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of
the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to
evade arrest by flight." *St. John*, 411 F.3d at 771 (quoting *Graham*, 490 U.S. at 396).

When considering the facts of the present case in light of the *Graham* factors, and taking the
facts in a light most favorable to the nonmoving Plaintiff, the analysis favors Plaintiff. Plaintiff was
pulled over for a mere traffic violation. Although the traffic stop escalated to an obstruction of
justice charge, according to Plaintiff's facts, at no time was he physically aggressive or threatening
to the officers. The threat the sixty-five year-old Plaintiff posed to the officers and the public in
general during this encounter, based on Plaintiff's account, was minimal. Plaintiff maintains that
he never resisted arrest, made any loud noises, or made any derogatory remarks. Additionally,
although the officers claim he was obstructive in refusing to answer Snow's questions, Plaintiff
allegedly indicated to Officer Snow that he could not recite the ABCs or read Snow's badge because
he was illiterate. Taking these facts in a light most favorable to Plaintiff, there is no indication that
Plaintiff was actively resisting arrest or seeking to flee the scene. Based on Plaintiff's account,
despite his lack of hostility and resistance, Snow nevertheless told DeVoll to arrest Plaintiff and put
him in the squad car. Following Snow's instruction, DeVoll uneventfully handcuffed Plaintiff.
According to Plaintiff, DeVoll then threw Plaintiff face-down onto the floor of Snow's squad car.
Plaintiff was subsequently forced to ride to the police station, face down, with his hands cuffed
behind his back.

Consequently, taking Plaintiff's version of the facts as true and considering the factors outlined in *Graham*, 490 U.S. at 396, Defendants were not objectively reasonable in throwing the non-physically threatening, handcuffed, sixty-five year-old plaintiff to the floor of Snow's police car and forcing him to ride in that position to the police station. As a result, this Court will deny Defendants' motion for summary judgment with respect to the claim of excessive force as it relates to Defendants DeVoll and Snow.

### 2. Deliberate Indifference Claim Against Snow and DeVoll

Plaintiff alleges that Officers Snow and DeVoll violated his Fourteenth Amendment rights when they knowingly failed to provide him with prompt medical attention. Plaintiff claims that while sitting in the squad car, he "suffered his heart attack." Pl. Resp., p. 17. Defendants assert that Plaintiff cannot establish such a claim of deliberate indifference because he cannot show that either of the Defendants knew Plaintiff had a medical need and because ultimately, Plaintiff was provided medical attention as soon as practicable.

A successful cause of action for failure to provide medical treatment under the Fourteenth Amendment requires that a plaintiff satisfy a two-prong test. First, he must demonstrate that the medical needs were serious and required attention that adhered to "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoted in *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)). Then, he must establish that a defendant was deliberately indifferent to those needs. *Id.* at 21-23. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

10

Taking the facts in the light most favorable to Plaintiff, Plaintiff initially told Officer Snow that he had a bad heart just before he was being handcuffed. Pl. Resp., Ex. 1, Dep. of Hussan, p. 22. Plaintiff then allegedly notified Officer Snow that he was having a heart attack once he was on the floor of the car. Plaintiff maintains that Officer Snow responded, "F**k you." *Id.* at 23. After arriving at the police station, Lieutenant Vergona and Officer Jamil escorted Plaintiff inside where he was booked. Plaintiff claims he again told the officers that he needed medical attention. This time the officers responded, interrupted the normal booking process, *Id.* at 21, and notified the Inkster Fire and Rescue Department. Plaintiff was subsequently transported to Annapolis hospital where he was treated.

Considering Plaintiff's claim, the Court concludes that Plaintiff has failed to establish a genuine issue of material fact in two respects. First, Plaintiff has failed to establish a genuine issue as to whether he had a serious medical need. Although Plaintiff alleges that he suffered a heart attack as a result of being thrown on the floor of the squad car, there is no evidence that supports such a claim. Cardiologist Chaman Sohal, M.D., testified plainly that Plaintiff "did not have a heart attack." Def. Mot., Ex. 5, Dep. of Sohal, p. 10. Furthermore, when questioned whether Plaintiff's congestive heart failure, an admittedly pre-existing condition that Plaintiff was diagnosed with several years before this incident, Pl. Resp., Ex. 1, Dep. of Hussan, pp. 8-10, could have been aggravated by the events of that evening, Dr. Sohal stated it was not possible, within a reasonable degree of medical certainty to say that Plaintiff's heart condition was aggravated as a result of the activities. Def. Mot., Ex. 5, Dep. of Sohal, p. 20. Plaintiff has presented no other evidence to support his claim that he had a serious medical need.

Second, Plaintiff has failed to establish a genuine issue of material fact as to Defendants'

subjective awareness and disregard of Plaintiff's alleged condition. Merely asserting that Defendant Snow directed an expletive towards Plaintiff, taken alone, does not raise a genuine issue of Defendants' subjective awareness as to Plaintiff's alleged medical need. Nor does the assertion raise a genuine issue of Defendants' deliberate disregard of Plaintiff's alleged need. *See Farmer*, 511 U.S. at 837. Finally, Plaintiff's claim of deliberate indifference is further undermined by his admission that the Inkster officers interrupted the normal booking process to address his medical needs.

Consequently, because Plaintiff has failed to raise a genuine issue of material fact that he suffered a serious medical need or that Defendants Snow and DeVoll were both subjectively aware of this need and deliberately disregarded it, no jury could find for Plaintiff on this claim. As a result, summary judgment in favor of Defendants Snow and DeVoll is appropriate on this issue.

### 3. Snow and DeVoll's Qualified Immunity Defense

Defendants Snow and Devoll argue, in the alternative, that even if this Court denies summary judgment with respect to the excessive force claim, Defendants are protected by the doctrine of qualified immunity. Qualified immunity is an affirmative defense that shields public officers from liability under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). The Sixth Circuit has adopted the Supreme Court's holding in *Saucier v. Katz*, 533 U.S. 194 (2001), that a ruling upon a governmental actor's assertion of qualified immunity involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter*, 408 F.3d 305, 310-11 (2005) (citing *Saucier*, 533 U.S. at 201).

The initial inquiry is whether the defendant's conduct violated a constitutional right.

12

*Saucier*, 533 U.S. at 201.  In the instant case, as detailed above, taking the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants' conduct when arresting Plaintiff was objectively reasonable.  *See Graham*, 490 U.S. at 396.  As a result, there is a genuine issue of material fact as to whether Defendants' violated Plaintiff's right to be free from the use of excessive force.  *St. John*, 411 F.3d at 771.

Turning to examine whether the right was clearly established, the Court of Appeals explained:

> As this circuit has analyzed the qualified immunity issue in excessive force cases, the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable. See *Martin* [*v. Heideman*], 106 F.3d [1308], 1312-13 [(6th Cir. 1997)]; *Walton* [*v. City of Southfield*], 995 F.2d [1331], 1342 [(6th Cir. 1991)].  It is clear from this circuit's analyses in various excessive force decisions that, having concluded that the right to be free from excessive force is clearly established, whether we grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.*, force that was not objectively reasonable).  *Martin*, 106 F.3d 1312-13; *Walton*, 995 F.2d at 1342; *Kain* [*v. Nesbitt*,]156 F.3d [669], 672-73 [(6th Cir. 1998)].  To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.

*Kostrzewa v. City of Troy*, 247 F.3d 633, 641-42 (6th Cir. 2001).  Consequently, because this Court has found that, taking the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants' use of force was objectively reasonable, there "naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful."  *Id.*  Consequently, Defendants are not entitled to the protection of an affirmative defense of qualified immunity.

**4.  Section 1983 Claim Against Defendant City of Inkster**

13

Plaintiff next alleges that Defendant City of Inkster maintained a policy of inadequate training or supervision of its officers, resulting in a violation of 42 U.S.C. § 1983.  Plaintiff maintains that Defendant City of Inkster's faulty training policy had two results.  First, because Defendant officers were not properly trained in the methods of utilizing force when making an arrest, Plaintiff was subjected to excessive force when he was thrown face down in the squad car following his arrest, causing him physical and emotional harm.  Second, because the officers were not properly trained in the standards for necessary medical treatment, Plaintiff was injured when Defendants failed to provide prompt medical attention.   The City of Inkster denies Plaintiff's allegations and requests summary judgment on the theory that Plaintiff has failed to present a genuine issue of material fact that indicates the existence of any policy or custom that resulted in Plaintiff's alleged injuries.

The Supreme Court has held that "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead, a plaintiff must show that the "alleged federal right violation occurred because of a municipal policy or custom."  *Id*.  The Sixth Circuit has indicated that there are four ways in which to prove a municipality's illegal policy or custom.

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694).

Plaintiff asserts a claim under part three of the *Monell* test.  *Id*.  Specifically, Plaintiff asserts that, "Based on the testimony of the Defendant Officers, it is obvious that they were acting in the

manner in which they were trained . . . . The evidence shows that the City of Inkster obviously does not train its officers in the proper methods and procedures . . . ." Pl. Resp., p. 15.  However, despite Plaintiff's assertion, Plaintiff has presented no evidence to support his bald conclusory statement. Plaintiff does not indicate what testimony by the officers he is referring to nor does he indicate why it is so "obvious" that they were acting in a manner akin to how they were trained.  Although this Court must take the facts in a light most favorable to Plaintiff as the non-moving party, bald, unsupported allegations are insufficient to withstand a motion for summary judgment because such an allegation fails to raise a genuine issue of material fact.  Plaintiff has failed to present any evidence that there is a link between Defendant's alleged excessive force and the manner in which they were trained.  Plaintiff has also failed to point to any custom or other policy that indicates that the City of Inkster would support, encourage, or even tolerate , the alleged behavior.  Consequently, because there is no genuine issue of material fact, no juror could reasonably find for Plaintiff on this claim. *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Accordingly, the Court will grant Defendant City of Inkster's motion for summary judgment on this claim.

### C.  Claims Pursuant to 42 U.S.C. § 1985(3)

Plaintiff Hussan's final allegation is that Defendants conspired to deprive him of his protected rights in violation of 42 U.S.C. §1985(3).  Section 1985(3) prohibits conspiracies formed for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws.  42 U.S.C. §1985(3).  The requirements for properly stating a claim under §1985(3) have been set out by the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).  *See Smith v. Gibson*, 524 F. Supp. 664, 668 (E.D. Mich. 1981).  Four elements are

15

necessary to state a cause of action under §1985(3).

> 1) The Defendants must conspire, 2) For the purpose of depriving, either directly of indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities. 3) The Defendants must act in furtherance of the object of the conspiracy whereby, 4) one was a) injured in his person or properties, or b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Smith*, 524 F. Supp. at 668 (citing *Griffin*, 403 U.S. at 102).

Of these four elements, the second element of a § 1985(3) action has received the most attention in the lower courts, requiring that "conspirators be motivated by class based animus" and that "there be a clearly defined class along with a showing of the requisite discriminatory motivation . . . ." *Id.* at 668-69  (citing *Griffin*, 403 U.S. at 101-02).

In the instant case, Plaintiff's complaint is entirely void of any discussion of the protected class of which he claims membership.  Responding to Defendants' challenge that he has failed to allege inclusion in a protected group, Plaintiff merely states: "Plaintiff is not Caucasian.  When Plaintiff told officers he could not read or write, they called him a dummy and began their assault upon him.  The officers have offered no feasible reason for their attack upon Plaintiff.  The only logical conclusion is that their activities were racially motivated."  The Court finds such a bald assertion baffling for several reasons.  First, instead of rebutting Defendants' summary judgment claim that Plaintiff has failed to demonstrate membership in a protected class with a direct statement of membership in a protected class, Plaintiff inexplicably indicates only that he "is not Caucasian." Plaintiff fails, however, to provide any legal support for the theory that non-Caucasian constitutes a protected class.  Second, although Plaintiff appears to claim that his illiteracy somehow supports his §1985(3) claim, he fails to offer support for the legal theory that individuals unable to read or write constitute a protected class.  Finally, Plaintiff argues that because Defendants' have not offered

16

a reason for their attack, "the only logical conclusion is that their attack was racially motivated." Such an unsupported logical leap, without more, does not raise a genuine issue of material fact. Thus, even examining the facts in a light most favorable to Plaintiff, Plaintiff has failed to establish any evidence in support of the second requirement of a §1985(3) claim, that "conspirators be motivated by class based animus" and that "there be a clearly defined class along with a showing of the requisite discriminatory motivation." *Smith*, 524 F. Supp. at 668-69. Consequently, no reasonable juror could find for Plaintiff with respect to this claim. The Court finds that summary judgment on this claim is appropriate for all Defendants.

### IV. Conclusion

The Court having conducted a review of the Defendants' motion for summary judgment and being fully advised and aware in the premises;

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 16] is **GRANTED IN PART and DENIED IN PART.**

Defendants' motion for summary judgment is **DENIED** in so far as it relates to Plaintiff's claim of excessive force in violation of 42 U.S.C. § 1983 against Defendant Officers Snow and DeVoll and is **DENIED** with respect to Defendants' assertion of an affirmative defense of qualified immunity.

The remainder of Defendants' motion for summary judgment is **GRANTED:** Plaintiff's claim of deliberate indifference against **DEFENDANTS SNOW and DEVOLL** is **DISMISSED WITH PREJUDICE**; Plaintiff's claim pursuant to 42 U.S.C. § 1983 against **DEFENDANT CITY OF INKSTER** is **DISMISSED WITH PREJUDICE and** Plaintiff's claim pursuant to 42 U.S.C. § 1985(3) against **DEFENDANTS SNOW, DEVOLL, and CITY OF INKSTER** is **DISMISSED**

17

**WITH PREJUDICE**.

Accordingly, the only claim remaining before this Court is Plaintiff's claim of excessive force pursuant to 42 U.S.C. § 1983 against Defendant Officers Snow and DeVoll.

**SO ORDERED.**

Dated:  September 29, 2006                    s/Paul V. Gadola
                                              HONORABLE PAUL V. GADOLA
                                              UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  October 3, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
         Margaret T. Debler; Douglas A. Dempsey; Edward D. Plato         , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


                                              s/Ruth A. Brissaud
                                              Ruth A. Brissaud, Case Manager
                                              (810) 341-7845

---

18